FILED'09 NOV 06 16:27USDC-ORP

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

UNITED STATES OF AMERICA,                                    CR 08-385-RE

        Plaintiff,

                                                  OPINION AND ORDER

    v.

JERONIMO BOTELLO-ROSALES,

        Defendant.

REDDEN, Judge:

        Defendant Jeronimo Botello-Rosales and four co-defendants are charged with conspiracy

to manufacture more than 1000 marijuana plants in violation of 21 U.S.C. § 841(a)(1);

841(b)(1)(A)(vii); and 846. Before the court is defendant's motion (doc. 82) to suppress all post-

arrest statements made by him while in the custody of law enforcement on August 27, 2008, on

the grounds that the statements were involuntary and obtained in violation of <u>Miranda v.</u>

PAGE 1 - OPINION AND ORDER

Arizona, 384 U.S. 436 (1966), and the Fifth Amendment to the U.S. Constitution.  On September 16, 2009, I held an evidentiary hearing and heard testimony from Yamhill County Interagency Narcotics Team Detective Brandon Bowdle, McMinnville Police Department Detective Jose Sales, federally certified court interpreter Terry Rogers, and defendant.  Because I find that defendant was adequately advised of his Miranda rights, and that his inculpatory statements were made knowingly, intelligently, and voluntarily, I DENY the motion to suppress.

## I. Background

In May 2008, two concerned citizens reported seeing several large outdoor marijuana grow sites on public forest land near the Tillamook-Yamhill County line.  The Tillamook County Sheriff's Office and the Yamhill County Interagency Narcotics Team ("YCINT") began investigating the report by placing hidden surveillance cameras at suspected "drop sites" along the forest roads near the grow sites.  Tr.  9:11-15.[1]  The cameras captured video images of suspected conspirators dropping food and supplies for the workers tending the marijuana grow sites.  Based on that video surveillance, vehicle record checks, and subsequent physical surveillance, the agents were able to connect defendant's residence to the marijuana grow operations.  Tr.  9:19 to 10:2.

At 5:11 a.m. on August 27, 2008, law enforcement officers executed a search warrant at defendant's residence.  Tr.  10:12-14.  Inside, officers found defendant, his girlfriend Luisa Judith Cabrera Figueroa, co-defendant Rafael Garcia-Valencia, Magda Camacho Vasquez, Fernando Fernandes Ararisa, and two children.  The officers handcuffed all of the adults and

---

[1]Tr.  refers to the official Transcript of Proceedings for the September 16, 2009 Hearing on Motion to Suppress.  Doc. 92.

brought everyone into the living room, where Detective Bowdle read the warrant aloud. Tr.

11:18-25. Agents searched the residence and seized: defendant's vehicle title, a Browning BAR

7mm caliber rifle, six different kinds of ammunition, nine cellular phones, marijuana seeds, drip

line pipe fitting, grocery receipts, and various documents linking defendant and the other adult

residents to the marijuana grow operation. Tr. 13:1-9. Based on that evidence, the investigating

officers decided to arrest all adult occupants and place the children in the custody of Department

of Human Services ("DHS"). Tr. 13:16-17.

    At approximately 7:00 a.m., Detective Brandon Bowdle and Detective Jose Salas

interviewed defendant inside a patrol vehicle. Because defendant said he did not speak English

and Detective Bowdle does not speak Spanish, Detective Jose Salas served as a Spanish

translator. Tr. 8:7-8. Though Detective Salas has not received any formal training as a Spanish

translator, he has acted as a Spanish translator during multiple suspect interviews. Tr.44-45.

Spanish was his primary language growing up, and he took Spanish courses in high school and

college. Tr. 44:19-45:5. Detective Salas also testified that he speaks Spanish at home, and that

he is comfortable translating Spanish during suspect interviews. Tr. 45.

    Prior to the interview, Detective Salas told defendant in Spanish that he was going to be

translating for the other officers, and "[i]f at any point [you] don't understand something I'm

telling [you] or [you] need to clarify something with me, just to let me know, we'll pause, make

sure everyone understands what we're trying to convey, and then move on." Tr. 45:25-46:9.

Reading from a card, Detective Bowdle then advised defendant in English:

> You have the right to remain silent. Anything you say may be used against you in
> a court of law. You have the right to talk to a lawyer and have him or her present
> with you while you're being questioned. If you cannot afford to hire a lawyer, one

will be appointed to represent you before any questioning if you wish.

Tr. 19:10-16.  Detective Salas then explained those rights to defendant in Spanish.  Tr. 19:17-22.

After translating the Miranda rights, Detective Salas asked defendant whether he understood his

rights.  Tr.  20:2-7; Tr. 48.  Defendant indicated that he did understand, and that he was willing to

speak with the officers.  Tr. 48.  Defendant did not ask the officers any questions or ask for

further clarification of any of the rights.  Tr. 48; Tr.  81:2-4.  Defendant then made several

incriminating statements about his immigration status and his involvement in the marijuana

cultivation business.  See Tr.  22:24-24:17-23.  Defendant was not willing to talk about his boss

because he feared for his life and his family.  Tr. 24:12-13.

Detective Bowdle and Salas described defendant's demeanor during the interview as

calm.  Tr. 28:16; Tr. 49.  His answers were responsive to the officers' questions, and he did not

appear nervous, afraid, or upset.  Tr. 28:13-29:2.  Detectives Bowdle and Salas both testified

that none of the officers made any promises or threats to defendant, and defendant never

indicated that he would only speak to the officers on certain conditions.  Tr. 29:3-17, Tr. 49.

Detective Salas testified that he had no difficulty understanding defendants' responses, and

defendant did not appear to have any difficulty understanding Detective Salas' questions.  Tr. 50.

After the interview, the officers brought defendant back to the living room of the

residence, where all of the adults were still handcuffed.  Tr. 30:4-8.  Detectives Bowdle and

Salas then attempted to interview co-defendant Rafael Garcia-Valencia and defendant's

girlfriend, Luisa Judith Cabrera-Figueroa, neither of whom spoke English.  As with defendant,

Detective Salas translated the Miranda rights for both Garcia-Valencia and Cabrera-Figueroa in

Spanish.  Both suspects invoked their right to silence and terminated the interviews.  Tr. 30-31.

PAGE 4 - OPINION AND ORDER

Shortly thereafter, DHS representatives arrived to remove the children from the residence. Tr. 31:1-7. Detective Bowdle advised the women at the house that they could accompany their children to the transport vehicle. Tr. 31:4-23. Officer Bowdle testified that defendant was in a position to see the children removed from the residence. Tr. 32:5-6. After DHS took custody of the children, law enforcement officers transported all of the adults in the residence to the Tillamook County Sheriff's Office. Tr. 32.

At 11:00 a.m., Detectives Bowdle and Salas met with defendant in the Tillamook County Sheriff's personal office for a second interview. Tr. 33:5-12. There, defendant provided additional details about the marijuana growing operation, including his role in the operation, how much money he expected to make, locations of undiscovered grow sites, and the identities of other individuals involved in the operation. Tr. 36-38. Defendant again indicated that he was not willing to talk about his boss, or the identities of the people transporting money and marijuana to and from Oregon. Tr. 39:9-12. Detective Bowdle testified that during the second interview, defendant's demeanor was calm and relaxed. Defendant's responses to the officer's questions were appropriate, and none of the officers made any threats or promises to defendant. Tr. 39. The officers did not record either of the interviews with defendant on the day of his arrest. Nor did they obtain a written waiver of Miranda.

At the September 16, 2009 hearing, defense counsel asked Detective Salas to translate the Miranda rights the same way that he did on the day of defendant's arrest. Tr. 53. Detective Bowdle read the Miranda rights aloud from his seat at counsel's table, and then Detective Salas translated the Miranda warning into Spanish. Tr. 54-55. Detective Salas explained that his translation of the Miranda rights "could have been a little different" the day of defendant's arrest,

PAGE 5 - OPINION AND ORDER

but testified that he explained "the essence" of each of the rights to defendant.  Tr.  58:10-17.

After Detective Salas' testimony, defense counsel called federally certified court interpreter Terry Rogers as a witness.  Ms. Rogers testified that although she had not been tracking Detective Salas' testimony for completeness or content, she made two notes about Detective Salas' in-court translation of the <u>Miranda</u> rights.  Tr.  62:12-17.  First, Detective Salas said in Spanish that defendant's statement could be used against him "in the law," instead of "in a court of law." Tr.  64:7-14.  Second, Detective Salas used the Spanish word "libre" to convey the idea that defendant had the right to an attorney at no cost.  Tr.  62:18-20.  Ms. Rogers testified that "libre" does not mean "without cost" in Spanish, but instead means "free" in the sense of "being free" or "freely." Tr.  62:20-24.  She stated that the use of the word "libre" "does not convey that you will not have to pay" for a lawyer.  Tr.  64:18-22.  Ms.  Rogers acknowledged, however, that Detective Salas' in-court translation of the <u>Miranda</u> rights included the phrase, "if you do not have funds to pay," you can have an attorney, "libre."  Tr.  68:68-69.  She also testified that she did not remember each of the "precise words" Detective Salas used during his translation of the <u>Miranda</u> rights, Tr.  64:15-16, that her notes of Detective Salas' translation were not complete, Tr.  69:17-20, and that she would need a transcript of what Detective Salas said in Spanish to give accurate testimony about what Detective Salas said.  Tr. 61:22-24.  The official transcript does not include Detective Salas' Spanish translation of <u>Miranda</u> because the court reporter was not certified to transcribe Spanish language testimony. Tr. 53.

Defendant also testified at the September 16, 2009 hearing.  Although he does not speak English, Defendant testified that he does understand English.  Tr. 78:7; <u>see</u> <u>also</u> Tr.  77:9-10 ("Q.

PAGE 6 - OPINION AND ORDER

So you speak some English? A. Not clearly, I can't speak, but I do understand."); Tr. 81:5-11

("Q. I notice that on some occasions you're starting to answer my question before it's translated.

Can you understand what I'm saying? A. Not everything too clearly. Q. But you understand

some of the English that's being spoken here today? A. A little.").

Defendant acknowledged that Detective Salas advised him of his <u>Miranda</u> rights in

Spanish before the first interview. Tr. 77:20-22. Defendant stated that although Detective

Salas' Spanish was "somewhat choppy," he did not tell Detective Salas that he was having

difficulty understanding. Tr. 81:1-4. Defendant testified that prior to the first interview in the

patrol vehicle, the officers assured him that if he "pled guilty to the charges," the women in the

house including his girlfriend (and mother of his child) would not be arrested. Tr. 73:23-25; <u>see</u>

<u>also</u> Tr. 79:5-7 ("I asked if I pled guilty to this, would they not arrest anyone else; and he said

that they wouldn't, that they would just take me in."). Defendant also testified that the

interviewing officers pressured him to talk, and said "if I didn't [talk], that it would be worse for

me." Tr. 75:10-11. Defendant claims that he waived his rights and admitted his involvement in

the marijuana growing operation because the officers told him no one else would be arrested if he

cooperated.

Defendant has had previous contacts with law enforcement. On October 25, 1999,

defendant was arrested for attempting to enter the United States illegally and making a false

claim of citizenship. On September 15, 2006, defendant was arrested for possession of a

controlled substance in California. In January 2008, defendant was arrested on multiple narcotics

and weapons counts in Las Vegas. Defendant acknowledged that was advised of his <u>Miranda</u>

rights in connection with that arrest, and that he knows what his rights are under <u>Miranda</u>. Tr.

PAGE 7 - OPINION AND ORDER

78:6-11 ("Q.  How long have you lived in this country? A. For about 16 years. Q. And you've

had police contact before? A. Yes. Q. And you know what your Miranda rights are? A.  Yes.").

## II.  Discussion

Defendant moves to suppress all post-arrest statements to law enforcement officers on the

grounds that the statements were elicited in violation of <u>Miranda</u>.  Defendant contends that the

<u>Miranda</u> warnings were inadequate as a matter of law because Detective Salas' in-court

translation of the rights failed to make clear that defendant had a right to an attorney at no cost

and that his statements could be used against him in a "court of law."  Defendant also argues that

his post-arrest statements were induced by the officers' assurances that the mother of his child

(and his child) would not be detained and therefore, his purported confession was involuntary.

A.  Adequacy of <u>*Miranda*</u> Warning

Whether a defendant "was given adequate <u>Miranda</u> warnings is a question of law."

<u>United States v. Connell</u>, 869 F.2d 1349, 1351 (9th Cir.  1989).  The admissibility of a statement

obtained from a defendant during a custodial interrogation depends on whether law enforcement

informed the suspect that they have the right to remain silent, that any statement may be used

against them in court of  law, that they have the right to the presence of an attorney, and that if

they cannot afford an attorney, one will be appointed for them prior to questioning if they so

desire.  <u>Miranda v. Arizona</u>, 384 U.S. 436, 479 (1966).[2]  No "talismanic incantation" is required.

<u>California v.  Prysock</u>, 453 U.S. 355, 359 (1981).  Rather, "what <u>Miranda</u> requires is meaningful

advice to the unlettered and unlearned in language which [they] can comprehend and on which

---

[2]There is no dispute that defendant made the statements at issue during a custodial
interrogation.

[they] can knowingly act." <u>Connell</u>, 869 F.2d at 1351(alteration in original; internal quotation omitted).

To be valid, a <u>Miranda</u> warning "cannot be affirmatively misleading." <u>Id.</u> at 1352. It must be "clear and not susceptible to equivocation." <u>United States v. San Juan-Cruz</u>, 314 F.3d 384, 387 (9th Cir. 2002). The warning must make clear that the arrested party has a right to the presence of an attorney prior to and during questioning, and if the arrested party cannot afford one, the government is obligated to appoint an attorney for free. <u>Id.</u> at 388.

Here, defendant was adequately advised of his <u>Miranda</u> rights in both English and in Spanish. Defendant has lived in the United States for 16 years, and admits that he understands English. In fact, defendant began answering questions at the September 16, 2009 hearing before the entire question was interpreted for him. There is no dispute that Detective Bowdle' English recitation of the <u>Miranda</u> rights was both complete and accurate. Detective Salas then adequately advised defendant of those same rights in Spanish.

The court interpreter's disagreement with two words Detective Salas used during his in-court translation of <u>Miranda</u> is not sufficient to show that the warnings were inadequate. The court interpreter acknowledged that she was not tracking Detective Salas' translation for content or completion, that she may have missed some of words Detective Salas used, and that she would need a transcript of what Detective Salas said in Spanish in order to testify accurately. She also acknowledged that Detective Salas did say "if you do not have funds," you have a right to a lawyer, "libre." In other words, Detective Salas did explain the essence of defendant's right to counsel under <u>Miranda</u>. Despite his omission of the word "court" from the phrase "in a court of law," I find that Detective Salas adequately advised defendant that any statements could be used

PAGE 9 - OPINION AND ORDER

against him. <u>Miranda</u> warnings need not be perfect, and the court interpreter's disagreement with two words Detective Salas used during his in-court Spanish translation does not render the <u>Miranda</u> warning deficient.

Defendant's reliance on <u>United States v. Perez-Lopez</u>, 348 F.3d 839 (9th Cir. 2003), is misplaced. There, the Ninth Circuit found a <u>Miranda</u> warning deficient because the officer told defendant that he could "solicit" an attorney if he did not have funds and therefore, the officer failed to convey the government's obligation to appoint an attorney for free. The Court specifically relied on the fact that "Perez-Lopez received no English-language Miranda warning (and would not have understood one in any event) . . . ." <u>Id.</u> at 849. Here, defendant acknowledged that he understands English and he knows his <u>Miranda</u> rights. Further, the ambiguity in <u>Perez-Lopez</u> is not present here. Detective Salas advised defendant that even if he did not have funds to pay, he was still entitled to a lawyer. Detective Salas' translation "conveyed the government's obligation to appoint an attorney for indigent accused." <u>Perez-Lopez</u>, 348 F.3d at 848. The officers adequately advised defendant of his <u>Miranda</u> rights.

### B. Waiver of *Miranda*

"For a confession obtained during a custodial interrogation to be admissible, any waiver of <u>Miranda</u> rights must be voluntary, knowing, and intelligent." <u>United States v. Vallejo</u>, 237 F.3d 1008, 1014 (9th Cir. 2001). To be knowing and intelligent, "the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." <u>Id.</u> The test for voluntariness is "whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or improper inducement so that the suspect's will was overborne." <u>Derrick v. Peterson</u>,

924 F.2d 813, 817 (9th Cir. 1990).  Coercive police activity is a "necessary predicate" to finding

that a confession is involuntary.  Colorado v. Connelly, 479 U.S. 157, 167 (1986).

   A valid waiver of Miranda depends on the totality of circumstances including:

"(1) whether the defendant signed a written waiver; (2) whether the defendant was advised of his

rights in his native tongue; (3) whether the defendant appeared to understand his rights;

(4) whether a defendant had the assistance of a translator; (5) whether the defendant's rights were

individually and repeatedly explained to him; and (6) whether the defendant had prior experience

with the criminal justice system." United States v. Garibay, 143 F.3d 534, 536-38 (9th Cir.

1998) (citations omitted).  The government bears the burden of proving a valid waiver by a

preponderance of the evidence.  Connelly, 479 U.S. at 168.

   I find that Detectives Bowdle and Salas adequately advised defendant of his Miranda

rights in English and Spanish before any questioning.  Defendant verbally acknowledged

understanding his Miranda rights and agreed to speak with investigators.  He did not ask for

further clarification of his rights, and he had the assistance of a translator throughout the

interview.  Detective Salas testified that he had no trouble communicating with defendant, and at

no time did defendant indicate that he was having trouble communicating with the officers.

Furthermore, defendant acknowledges that he understands English, knows his Miranda rights,

and has been arrested numerous times in Oregon, California, and Nevada.  Defendant was aware

of his nature of his rights, and the consequences of abandoning those rights.

   Defendant's statements were made voluntarily.  Detectives Bowdle and Salas both

testified that defendant's demeanor during the interview was calm, his answers were responsive,

and he did not appear nervous, afraid, or upset.  They also testified that none of the officers made

any promises or threats to defendant, and defendant never said that he would speak to the officers only on certain conditions.  The officers did not threaten or coerce defendant.

I am not persuaded by defendant's testimony that the officers told him they would not arrest his girlfriend "if he pled guilty."  Both detectives denied making any such promise. Defendant's testimony was also contradicted by the undisputed chronology of events.  The officers arrested all of the adults at the residence (including defendant's girlfriend) and placed them all in handcuffs in the living room before defendant's interview.  Additionally, defendant continued to make inculpatory statements to the officers after seeing the officers arrest his girlfriend and transport her to jail, and after seeing DHS representatives take custody of his child. Defendant's testimony that the officers assured him that his girlfriend would not be arrested if he "pled guilty" is simply not credible.  Under these circumstances, I find that defendant voluntarily, knowingly, and intelligently waived his Miranda rights.

### III.  Conclusion

For the reasons stated above, I DENY defendant's motion to suppress post-arrest statements (doc.  82).

IT IS SO ORDERED.

DATED this 6 day of November, 2009.


_____
James A.  Redden
United States District Judge